IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SHIRLEY J. CASSELS,

      Plaintiff,

  v.                                     Civil Action 2:15-cv-1459
                                       Judge Michael H. Watson
                                       Magistrate Judge Jolson

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Shirely J. Cassels, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for social security disability insurance benefits ("DIB") and supplemental security income ("SSI"). For the reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner's nondisability finding and **REMAND** this case to the Commissioner and the Administrative Law Judge ("ALJ") under Sentence Four of § 405(g).

## I. BACKGROUND

A.      **Prior Proceedings**

Plaintiff filed her DIB and SSI applications on November 14, 2011, alleging a disability onset date of June 30, 2011. After an administrative hearing on October 24, 2013, the ALJ denied benefits on December 19, 2013. That became the Commissioner's final decision on March 9, 2015, when the Appeals Council denied review. Plaintiff now appeals. (*See* Doc. 8 (administrative record); Doc. 9 (statement of specific errors); Doc. 14 (memorandum in opposition); Doc. 15 (reply)).

1

B.  **Plaintiff's Testimony at the Administrative Hearing**

Plaintiff was 47 years old at the time of the administrative hearing. She completed the eleventh grade but never graduated or earned a GED. From 1996 until 2011, she worked at various Wendy's restaurants. Her Wendy's jobs included, among others, working at the cash register, preparing food, cleaning, and unloading food-supply trucks.

Plaintiff testified that she stopped working in 2011 because of pain in her hands, back, legs, and neck. Her back pain stretches from her toes to the middle of her lower back; her left leg in particular gives her great pain; and her back, legs, and toes either tingle or are often numb. (*See* Doc. 8-2 at Tr. 51, PAGEID #: 107). She testified that her back issues and related pain make it hard for her to do much around the house. (*See, e.g.*, *id.* at Tr. 50–55, PAGEID #: 106–10). Plaintiff also testified about her neck issues, including her neck surgery in July of 2011. Although the surgery has provided some measure of relief, her neck gets stiff and still gives her pain. (*See, e.g.*, *id.* at Tr. 51, PAGEID #: 107).

Plaintiff said she could walk on level ground for roughly half an hour, stand for 15 or 20 minutes, and sit for up to an hour. She testified that her pain prevents her from bending forward, squatting, or lifting more than five pounds. On a typical day, Plaintiff might read and watch television. She can do some light cleaning around the house but cannot cook, do dishes, or do laundry. Plaintiff testified that her niece comes over several days a week to help with household chores.

C.  **The Medical Records**

Plaintiff has had a series of neck and back injuries since at least 2010. In 2010, she was diagnosed with cervical spine disease and stenosis and, in July of 2011, underwent neck surgery. (Doc. 8-7 at Tr. 374, 391, PAGEID #: 435, 452). Dr. Ghassan Bejjani performed the surgery,

which required inserting a compression plate and screws into Plaintiff's neck. (*See id.* at Tr. 349–52, PAGEID #: 410–13). Plaintiff continued to see Dr. Bejjani after her neck surgery and continued to present with mild neck pain through 2012. (*See, e.g.* Doc. 8-8 at Tr. 880, PAGEID #: 942).

The record also demonstrates a history of back problems beginning in early 2011. Plaintiff visited the hospital on February 20, 2011, for back pain that radiated into her legs, and she reported that the symptoms had been ongoing for two months. (Doc. 8-7 at Tr. 645, PAGEID #: 705). In October of 2011, she reported a "burning pain shooting from her left foot all the way to the top of her head," and that her left leg was numb, weak, and tingling. (*Id.* at Tr. 355, PAGEID #: 416). According to the tests and doctors' notes associated with her October 2011 hospital visit, Plaintiff suffered from several back ailments, including bulging and herniated discs. (*See, e.g.*, *id.* at Tr. 366, PAGEID #: 427; *id.* at Tr. 375, PAGEID #: 436; *id.* at Tr. 370, PAGEID #: 431). The emergency room physician who treated Plaintiff reviewed an MRI from May of 2011, which indicated "a severe degree of degenerative dis[c] disease and bulging, lumbar stenosis." (*Id.* at Tr. 353, PAGEID #: 414). Plaintiff also reported numbness in her feet, particularly in her left foot, in October 2011.

Plaintiff saw several doctors for her back pain. Dr. Bejjani, who performed her neck surgery, conducted follow-up visits related to Plaintiff's neck surgery and for her back pain. During these visits, she consistently reported low back pain, leg heaviness, pain and tingling in her left foot, and occasionally complained of numbness in her neck. (*See, e.g.*, *id.* at Tr. 482–88, PAGEID #: 543–49). Dr. Bejjani's treatment notes also indicate that Plaintiff exhibited leg weakness and an unsteady gait as early as June of 2011. (*Id.* at Tr. 490, PAGEID #: 551).

Plaintiff's primary-care physician was Dr. Bengara. (*See, e.g.*, *id.* at Tr. 512, PAGEID #:

573).  Like Dr. Bejjani's, Dr. Bengara's patient notes indicate a consistent pattern of leg, back, and neck pain (and the attendant symptoms) starting in February of 2011.  (*See, e.g.*, *id.* at Tr. 513, PAGEID #: 574).  His notes further indicate that her pain ranged from moderate at the low end to "[c]onsiderable pain" that sometimes ran down her back and into her left leg and foot.  (*Id.* at Tr. 596, PAGEID #: 657).  Dr. Bangera was concerned enough about her back and leg pain that he ordered her to limit her lifting and chopping activities at work on February 21, 2011.  (*Id.* at Tr. 637, PAGEID #: 698).

Plaintiff's back (and leg and foot) issues continued beyond 2011.  She reported back and leg pain into 2012, with at least monthly visits to a local pain center in West Virginia starting in November 2011 and continuing through March 2012.  (*Id.* at Tr. 706, PAGEID #: 767).  Plaintiff continued to report back, leg, and neck pain in her follow-up visits to doctors through the remainder of 2012.  (*See, e.g.*, Doc. 8-8 at Tr. 883, PAGEID #: 945).  She also continued to complain of back and leg pain in her follow-up appointments for depression and anxiety through 2013 up until her hearing.  (*See id.* at Tr. 807–39, PAGEID #: 869–901).

The treatment for Plaintiff's back pain produced mixed results.  The record indicates physical therapy worked briefly, but Plaintiff suffered pain setbacks shortly thereafter.  (*See, e.g.*, Doc. 8-7 at Tr. 584, PAGEID #: 645; *id.* at Tr. 674, PAGEID #: 735).  Plaintiff also received epidural injections to help with her back pain throughout 2011, 2012, and 2013.  These shots occasionally helped with pain management, but the benefits were not long-lasting.  (*See, e.g.*, *id.* at Tr. 713, PAGEID #: 774; Doc. 8-8 at Tr. 868, PAGEID #: 930).

**D.     The ALJ's Decision**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of June 30, 2011.  (*See generally* Doc. 8-2 at Tr. 19–31, PAGEID #: 75–87).

He concluded several of Plaintiff's impairments were severe, including degenerative disc disease of the lumbar spine and degenerative disc disease of the cervical spine. In addressing Plaintiff's residual functional capacity, he discussed the points in the record that demonstrated periods of improvement with Plaintiff's back and leg pain. Although he found that Plaintiff could not perform her past work, the ALJ nevertheless concluded she could do the jobs identified by the vocational expert. Consequently, the ALJ denied benefits.

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. Nat'l Labor Relations Bd.*, 296 F.3d 384, 395 (6th Cir. 2002).

## III. DISCUSSION

**A.  Controlling Weight to Plaintiff's Treating Physician**

Under the treating-physician rule, "the Commissioner has mandated that the ALJ '*will*' give a treating source's opinion controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

5

substantial evidence in [the] case record.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (emphasis added) (quoting 20 C.F.R. § 404.1527(d)(2)).  If the ALJ does not give a treating source's opinion controlling weight, she must balance several "factors to determine what weight to give it: 'the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).

No matter how much weight the ALJ gives a treating physician's opinion, she must "always give good reasons" for her determination.  20 C.F.R. § 404.1527(c)(2).  "This requirement is not simply a formality," *Cole*, 661 F.3d at 937, but is a "procedural" safeguard that "serves both to ensure adequacy of review and to permit the claimant to understand the disposition of h[er] case," *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550–51 (6th Cir. 2010).  In order to meet the "good reasons" standard, the ALJ's determination "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and *the reasons for that weight*."  *Cole*, 661 F.3d at 937 (emphasis added).

At issue in this case is the opinion of Dr. Bangera, Plaintiff's primary-care physician since 2008.  (*See generally* Doc. 8-7 at Tr. 567–655, PAGEID #: 628–716).  His treatment notes demonstrate that Plaintiff consistently presented with serious back pain.  (*See, e.g.*, Doc. 8-8 at Tr. 861, PAGEID #: 923 (notes from a 2/24/12 doctor's visit listing "chronic back pain" as a current ailment); Doc. 8-7 at Tr. 576–77, PAGEID #: 637–38 (same for a 12/19/11 doctor's visit); *id.* at Tr. 578–79, PAGEID #: 639–40 (same for an 11/15/11 doctor's visit); *id.* at Tr. 582–83, PAGEID #: 643–44 (notes from a 10/27/11 doctor's visit listing "neck and back problems"

and "left-sided numbness and pain" as current ailments); *id.* at Tr. 584, PAGEID #: 645 (noting that Plaintiff "complain[ed] of low back pain and sciatica on the left side" at a 10/6/11 doctor's visit); *id.* at Tr. 596, PAGEID #: 657 (notes from a 3/21/11 doctor's visit: "Patient is continuing to have the pain in the low back and bilateral sciatica going down her left leg"); *id.* at Tr. 598, PAGEID #: 659 (Dr. Bangera noting at a 2/21/11 visit that Plaintiff "had been to the ER on 02/20/11 complaining of back pain and numbness going down both legs")).

In November of 2012, Dr. Bangera evaluated Plaintiff's abilities in connection with her claim for benefits. According to Dr. Bangera's opinion, Plaintiff: could walk and stand for less than an hour and sit for less than two hours in an eight-hour work day; could lift a maximum of five pounds; could not use her hands for simple grasping and handling, pushing and pulling, and tasks requiring fine motor skills; could not use her feet to operate foot controls; and could not bend, kneel, squat, crawl, climb stairs, or climb latters. (*See* Doc. 8-8 at Tr. 844–45, PAGEID #: 906–07).

> The ALJ discounted Dr. Bangera's opinion in a single paragraph:
>
> The opinion of Divakar Bangera, M.D., a treating source, was also considered but not given great weight (Exhibit 23F). This opinion is not supported by any objective evidence, including physical examinations, or by the claimant's activities that include traveling, visiting, shopping, and attending church. Further, it is not supported by his own treatment notes that show essentially normal neurological and physical examinations and that the claimant was walking daily for exercise up to 30 minutes a day (Exhibits 8F and 23F).

(Doc. 8-2 at Tr. 28, PAGEID #: 84).

Applying the treating-physician rule here, the ALJ's cursory explanation fails to meet the requirements of 20 C.F.R. § 404.1527(c)(2). The type of wholly conclusory and generalized statements the ALJ provided in this case do not meet the good reasons standard and thus fail to comply with the treating-physician rule. The ALJ, for example, "does not offer any explanation

7

for his conclusion" that "the treating physician's opinions were inconsistent with the medical evidence," which is enough by itself for error. *Blackburn v. Colvin*, No. 5:12CV2355, 2013 WL 3967282, at *7 (N.D. Ohio July 21, 2013). He also "neither identifies the 'objective [evidence]' at issue nor discusses the[] inconsistency with Dr. [Bangera]'s opinion," which is again in error. *Friend*, 375 F. App'x at 551. And his conclusion that Dr. Bangera's opinion is "'not well-supported by any objective findings' is ambiguous," which "hinders a meaningful review of whether the ALJ properly applied the treating-physician rule." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013).

In addition to being conclusory and generalized, the reasons the ALJ does provide have little support in the record, which further undercuts the goal of "permit[ting] the claimant to understand the disposition of h[er] case." *Friend*, 375 F. App'x at 551. Contrary to the ALJ's explanation, the record contains numerous medical reports confirming the extent of Plaintiff's pain and physical limitations. (*See, e.g.*, Doc. 8-7 at Tr. 353–76, PAGEID #: 414–36; *id.* at Tr. 543–49, PAGEID #: 604–10; Doc. 8-8 at Tr. 807–39, PAGEID #: 869–901). The ALJ further referred to treatment notes indicating Plaintiff had a steady gait and normal strength at several points in 2011 and 2012, but ignored treatment notes from the same doctor's visit or from another visit close in time demonstrating that Plaintiff was still in pain. (*See, e.g.*, Doc. 8-7 at Tr. 482, PAGEID #: 543; *see also, e.g.*, *id.* at Tr. 576, 661, PAGEID #: 637, 722 (records from December of 2011 and January of 2011 detailing Plaintiff's back pain, which contravenes the ALJ's statement that the record included limited to no instances of further pain until her next neurosurgeon visit in August 2012)); *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 435 (6th Cir. 2013) ("Instead of performing a proper analysis of the medical evidence under agency regulations and controlling case law, the ALJ cherry-picked select portions of the medical record

8

to discredit [Plaintiff]'s pain.").

In short, the ALJ simply "dismiss[ed]" Dr. Bangera's opinion as "'incompatible' with other evidence of record" without any "effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick." *Gayheart*, 710 F.3d at 377. As the Sixth Circuit has held, such a cursory rejection of a treating physician's opinion "is not enough" to satisfy the good reasons requirement. *Friend*, 375 F. App'x at 552; *see Cole*, 661 F.3d at 939 ("This Court has made clear that [w]e do not hesitate to remand when the Commissioner has not provided good reasons for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion." (internal quotation marks omitted)).

The Commissioner resists this conclusion, arguing that substantial evidence in the record supports the ALJ's decision. That, however, is not the question at this stage. While a "treating physician's opinion can be properly discounted if there is substantial medical evidence to the contrary," *Dyer v. Soc. Sec. Admin.*, 568 F. App'x 422, 426 (6th Cir. 2014), an ALJ must always provide "good reasons" in articulating why she or he discounted the treating physician's opinion in the first place. In other words, "[t]he administrative law judge must [still] give 'good reasons' for the weight—or lack of weight—given a treating physician's opinion." *Id.* If the ALJ does not, as is the case here, then it does not matter whether substantial evidence supports the ALJ's conclusion. *Wilson*, 378 F.3d at 546 (6th Cir. 2004) ("A court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely.").

9

**B.     The Remaining Assignments of Error**

Plaintiff also argues that the ALJ erred in his determination of Plaintiff's credibility and his finding that Plaintiff's migraines were not severe.  Though these arguments have at least some merit, the Court's decision to reverse and remand on the ALJ's error in discounting Plaintiff's treating physician does away with the need for an in-depth analysis of Plaintiff's remaining assignments of error.  Nevertheless, on remand, the ALJ may consider Plaintiff's remaining assignments of error if appropriate.

## IV. CONCLUSION

For the reasons stated, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner's nondisability finding and **REMAND** this case to the Commissioner and the ALJ pursuant to Sentence Four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendation.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).  Failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also

operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140, 152–53 (1985).

    IT IS SO ORDERED.

Date: June 3, 2016                                           /s/ Kimberly A. Jolson
                                                                                  KIMBERLY A. JOLSON
                                                                                   UNITED STATES MAGISTRATE JUDGE